# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| DAVID COURTNEY ZELLER,<br><br>Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC.,<br><br>Defendant. | Civil Action No. TDC-17-1425 |

## MEMORANDUM OPINION

Plaintiff David Courtney Zeller, an inmate at the Western Correctional Institution ("WCI") in Hagerstown, Maryland, has filed a civil action against Wexford Health Sources, Inc. ("Wexford"), presenting complaints about his dental care. He has also filed a Motion for Appointment of Counsel. Wexford has filed a Motion to Dismiss or in the Alternative, Motion for Summary Judgment in response to the Complaint as initially filed. The Motion is fully briefed. In addition, Zeller has filed multiple documents that appear to seek to supplement or amend the Complaint. Upon consideration of the submitted materials, the Court finds that no hearing is necessary to resolve the pending Motions. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion Appointment of Counsel will be DENIED, and the Motion for Summary Judgment will be GRANTED. The Court will construe the first two supplemental filings as an Amended Complaint and will accept it as the operative Complaint.

## BACKGROUND

On May 18, 2017, Zeller, who at the time was incarcerated at Jessup Correctional Institution ("JCI") in Jessup, Maryland, initiated this matter by filing a Complaint against

Wexford, asserting that he received improper dental care beginning in 2011. Specifically, he asserts that he had problems with his dentures in that he disliked the denture cleaner and adhesive provided to him in prison. He seeks injunctive and declaratory relief consisting of a soft diet and for the Court to determine what is "fair." Compl. at 6-7, ECF No. 1. At the end of the Complaint, Zeller wrote that he was "frightened by all this & what these can are [sic] capable of." *Id.* at 7. Zeller added "I may very well end up dead-murdered." *Id.*

On May 30, 2017, after considering Zeller's Complaint and attachments and other cases Zeller had recently filed which suggested that Zeller could be experiencing mental health concerns potentially affecting his safety and well-being, the Court ordered the Maryland Department of Public Safety and Correctional Services ("DPSCS") to provide a report addressing Zeller's mental and physical health. On June 9, 2017, counsel for the Office of the Attorney General of Maryland submitted the required report with a declaration and 360 pages of Zeller's medical and mental health records. This information provided that Zeller has met with medical providers on 82 occasions, was receiving medical and mental health treatment, and had met with mental health providers 26 times since January 2017. Zeller has received treatment by a psychiatrist and has had weekly visits with a nurse. Further, medical providers could refer Zeller for additional services from the Psychology Department as needed. Based on this information, the Court was satisfied that emergency injunctive relief was not necessary.

## DISCUSSION

### I.    Motion for Appointment of Counsel

On February 19, 2019, Zeller filed a Motion for Appointment of Counsel, without specifying in which of his pending cases he intended to file the Motion. In light of Zeller's self-represented status and the reasons he provides for his request for counsel, the Motion was docketed

in this matter and his other pending cases: *Zeller v. Jordan,* TDC-17-1629, *Zeller v. Choi,* TDC-17-2030, *Zeller v. Zhou,* PWG-2650, and *Zeller v. Wexford,* PWG-17-3136. Zeller's Motions will be separately considered in each of his cases.

Zeller requests appointment of counsel in this case because he has filed many cases in this Court and suffers from mental illness, making it difficult for him to effectively manage his litigation. He provides no specific reason why he is unable to litigate the instant case on his own. "The court may request an attorney to represent any person" proceeding *in forma pauperis* who is "unable to afford counsel." 28 U.S.C. § 1915(e)(1) (2012). In civil actions, the Court appoints counsel only in exceptional circumstances. *Cook v. Bounds,* 518 F.2d 779, 780 (4th Cir. 1975). In doing so, the Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam,* 739 F.2d 160, 163 (4th Cir. 1984) (citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa,* 490 U.S. 296 (1989). Exceptional circumstances include a litigant who "is barely able to read or write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez,* 587 F. Supp. 2d 717, 723 (E.D. Va. 2008); *see also Altevogt v. Kirwan,* No. WDQ-11-1061, 2012 WL 135283, at *2 (D. Md. Jan. 13, 2012). Inherent in this analysis is that one's indigence is insufficient to establish exceptional circumstances.

At this point, Zeller has adequately conveyed that he is alleging claims of inadequate dental treatment and inadequate medical care as described in later claims such that counsel is not necessary to allow for a fair assessment whether Zeller has viable claims. Should the case proceed to discovery or beyond, the Court may consider whether Zeller's mental state would necessitate appointment of counsel. The Motion for Appointment of Counsel will therefore be denied without prejudice.

## II. Motion to Dismiss or, in the Alternative, Motion for Summary Judgment

In the original Complaint, Zeller asserts claims of inadequate dental care, which the Court construes as a claim under 42 U.S.C. § 1983 for deliberate indifference to inmate health, in violation of the Eighth Amendment to the United States Constitution. Wexford seeks dismissal or summary judgment on the grounds that (1) Wexford cannot be held vicariously liable under section 1983; and (2) Wexford does not provide dental care to inmates at WCI. For the reasons set forth below, the Motion will be granted.

### A. Legal Standards

Wexford seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Wexford has attached exhibits to its Motion. Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court may consider only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P.

4

12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted). Here, the notice requirement is satisfied by the title of the Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d) explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). Where Zeller has provided no such affidavit or explanation, the Court may construe the Motion as one for summary judgment on issues for which it considers the record evidence.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only

if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## B.     Motion to Dismiss

Wexford seeks dismissal because the Complaint fails to mention Wexford in the body of the Complaint and thus apparently proceeds on a theory of *respondeat superior*, that Wexford may be held vicariously liable for the acts or omissions of medical personnel working for Wexford. Section 1983 requires a showing of that a defendant acted personally in the deprivation of rights. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). There is no *respondeat superior* or vicarious liability under § 1983. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017). Where Zeller has not alleged such personal conduct by Wexford, as opposed to individual dentists, his claims necessarily fail.

As a prison medical provider, Wexford could be held liable for deliberate indifference to inmate safety if the claim is based on a custom or policy of deliberate indifference. *Austin v. Paramount Parks,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.,* 678 F.2d 504, 506 (4th Cir. 1982). Where Zeller has not alleged or identified unconstitutional policies and procedures that were the motivating force behind the alleged denial of dental care, his claims will be dismissed for failure to state claim.

## C.     Motion for Summary Judgment

Alternatively, Wexford seeks summary judgment on the grounds that it does not employ the dentists at WCI. Wexford has submitted the affidavit of Dr. Asresahegn Getachew, the Acting Medical Director of WCI and North Branch Correctional Institution ("NBCI"). In the declaration,

Dr. Getachew states, "Wexford does not provide dental care to inmates in the DPSCS system and does not employ any dentists or oral surgeons within the DPSCS system." Getachew Decl. ¶ 4, ECF No. 29-5. In neither the Complaint nor Zeller's memorandum of law in opposition to the Motion ("Opposition") has Zeller provided any allegation or evidence to refute this fact. Where there is no genuine issue of material fact on this point, the Court will grant summary judgment to Wexford on the dental claims.

To the extent that Zeller has made additional allegations in its Opposition, such as that Nurse Brenda Reese has not provided him with pain medication, that Wexford is short-staffed at NBCI, and that he was denied approval to see an unspecified specialist, they will not be considered here, since a complaint may not be amended in a brief on a motion. *See Mylan Labs., Inc. v Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (stating that "it is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss" (internal citation omitted)); *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint") (internal citations omitted), *aff'd*, 141 F.3d 1162 (4th Cir. 1998). Arguments relating to claims that will, as discussed below, be deemed the subject of Zeller's Amended Complaint will be addressed at a later point in the case.

## III.     Amendments

Since the filing of the Complaint, Zeller has filed five supplemental documents (the "Amendments") which the Court construes as intended to supplement or amend the Complaint: on May 30, 2017, he filed a 14-page document which begins on a standard form complaint, with six pages of attachments, ECF No. 4; on the same day, he filed a separate 24-page document with 52 pages of attachments, ECF No. 6; on June 7, 2017, he filed a seven-page document with six

pages of attachments, ECF No. 9; on June 9, 2017, Zeller filed multiple pages of correspondence that are largely illegible and incomprehensible, ECF No. 10; and on June 14, 2017, he filed a four-page document, ECF No. 11. (consisting of four pages). Zeller also has submitted other letters to the court ("the Letters"), ECF Nos. 13, 14, 15, 19.

Under Federal Rule of Civil Procedure 15, a party may amend the Complaint once as a matter of course within 21 days after serving it or within 21 days after the service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). Any additional amendments require leave of the court, which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). On motion and reasonable notice," the court may "on just terms," permit a party to file a "supplemental pleading" to describe events "that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Because ECF No. 4 and ECF No. 6 were filed the same day and within 21 days of the original Complaint, the Court will construe them as an Amended Complaint as of right.

The Court will not grant leave to file the additional Amendments and the Letters as amendments or supplements to the Complaint. First, these filings do not qualify as supplemental pleadings under Rule 15(d) because they do not simply describe events since the filing of the Complaint relating to the original allegations. Second, even if construed as proposed amended complaints, the Amended Complaint already accepted, ECF Nos. 4 and 6, has already identified an extensive list of issues unrelated to the dental claims in the original Complaint. The additional filings either assert new issues entirely unrelated to those claims that do not fairly belong in the same case, issues already raised in Zeller's multiple other cases in this District, which number nine cases filed since 2017, or simply restate allegations made in the Amended Complaint. Zeller's propensity to seek to add new allegations prevents the orderly administration of justice by not permitting the Court and Defendants to have a definable pleading upon which to base their actions.

The Court therefore finds that justice does not require, and indeed weighs against, acceptance of the additional amendments at this time. Going forward, amendments will be governed by the Court's Case Management Order, ECF No.36.

In his Amended Complaint, Zeller seeks to add new Defendants Warden Wolfe of Jessup Correctional Institution; Stephen T. Moyer, Secretary of the DPSCS; Bolaji Onabajo, M.D.; Ayoku Oketunji, M.D.; and Titalayo Otunuga, N.P. He alleges that: (1) he received inadequate medical care for a fall from his bunk on May 11 or 12, 2013, for his swollen ankles, and for his herniated disc and cervical pain; (2) Dr. Onabajo failed to change his pain medication in October or November 2016; (3) Dr. Oketunji abruptly stopped his Ultram prescription without weaning him off the medication; (4) his Ultram prescription was too weak to be effective, though Zeller admits he traded his pain medication pills (Ultram and Tramadol) for paper, pens, envelopes, and laundry soap; (5); Officer Choi and unnamed officers at JCI used excessive force against him on January 16, 2017; (6) Nurse Otunuga refused him pain medication in "April-May" and after he fell from his bunk on May 12, 2017; (7) on May 11, 2017, Nurse Otunuga refused to help him get up from the floor after he fell from his wheelchair; (8) he needs Harvoni, a medication for treating Hepatitis C virus ("HCV"), and that his treatment for HCV was delayed for six years; (9) Dr. Onabajo failed to monitor his HCV treatment in November and December 2016; (10) Dr. Moore and Dr. Bryant provided ineffective mental health care during his HCV treatment; (11) he is not timely seen in response to sick call slips; (12) he has been denied his medical, mental health, and dental records; and (13) Officer Jordan has denied him medical care. Zeller requests declaratory and injunctive relief for "Defendants to stay away" from him, an "outside specialist" to treat him, a specialist to diagnose his "very frightening symptoms," pain medications "to his satisfaction," and a fan. ECF No. 4 at 13, 14, 16, 17. He asks for supplies for his dentures, plenty of pencils, paper, and

envelopes, and laundry detergent, and to "make sure I'm comfortable for rest [sic] of sentence too." *Id.* at 13-14. He also asks to remove Sgt. Jordan from his shift.

Because Zeller is a prisoner suing "a governmental entity or officer or employee of a governmental entity," the Court must screen his Complaint before it may proceed, and the Court must dismiss any part of the Complaint that, as relevant here, fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(a), (b)(1). Upon such a review, the Court finds that several claims in the Amended Complaint were presented in other cases filed by Zeller. Parties are generally not permitted to pursue the same claim in two simultaneously filed cases. "The rule against claim splitting 'prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action.'" *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 635 (4th Cir. 2015) (citation omitted). "In a claim splitting case, as with the traditional res judicata analysis, the second suit will be barred if the claim involves the same parties or their privies and 'arises out of the same transaction or series of transactions' as the first claim." *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 452 F. Supp. 2d 621, 626 (D. Md. 2006) (citing *Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1269-70 (11th Cir. 2002)), *aff'd*, 273 F. App'x 256 (4th Cir. 2008). First, in *Zeller v. Lane*, No. TDC 17-1016, Zeller claimed that on May 11 or 12, 2017, Sgt. Jordan refused to allow him to use the restroom while Zeller was waiting to be seen by medical personnel, threatened him, and assaulted him. Zeller claimed that he was not brought to the medical unit to treat his neck, ankle, and foot pain for two or three days. On August 8, 2018, the Court granted summary judgment in favor of in Sgt. Jordan. In *Zeller v. Jordan*, No. TDC-17-1629, Zeller claims that Sgt. Jordan generally denied him medical care during the time he was incarcerated at JCI. Based on these cases, Zeller's claim that Sgt. Jordan has denied him medical care on May 11 or 12, 2017 has already been adjudicated and will be dismissed. His claim

that Jordan generally denied him medical care will be dismissed without prejudice here because it is under consideration in *Zeller v. Jordan*, No. TDC-17-1629.

In *Zeller v. Choi*, No. TDC-17-2030, Zeller claims he was assaulted by Officer Choi on January 16, 2016. He claims other unnamed officers kicked and beat him, placing their boots on either side of his throat to cut off his wind. Because Zeller's claim against Choi is being addressed in a separate case, it will be dismissed here without prejudice.

In *Zeller v. Wexford*, No. PWG-17-3136, Zeller alleged that he was denied treatment for HCV for several years and the delay prevented a positive response to later administered Harvoni. On March 11, 2019, the Court (Grimm, J.) denied a Motion to Dismiss or for Summary Judgment filed by Defendants Wexford, Ayoku Oketunju, M.D., and Bolaji Onabajo, M.D. and appointed *pro bono* counsel to represent Zeller. Accordingly, Zeller's claims in the instant case that he needs Harvoni, that his HCV treatment was delayed for six years, and that Dr. Onabajo failed to monitor his HCV treatment during November and December 2016, are being separately litigated and will be dismissed without prejudice.

Finally, Zeller's allegations against Otunuga were a subject of his claims in the separate case of *Zeller v. Lane*, No. TDC-17-1016. Zeller later filed a voluntary Motion to Dismiss Otunuga, which the Court granted, in which he stated that "[s]he has separated herself from Wexford Health Sources, Inc., employment showing some common sense & judgment." No. TDC-17-1016, ECF No. 36. Where Zeller's filing of a dismissal in that case occurred after the filing of the Amended Complaint in the present case, the Court presumes that Zeller is no longer pursuing the claims against Otunuga here. Moreover, because Zeller engaged in claim-splitting and resolved the claims in the prior case, the Court will dismiss them here without prejudice.

For these reasons, the Court will dismiss without prejudice Claims 5, 6, 7, 8, and 9, as numbered above. Claim 13 will be dismissed with prejudice as to the claim Sgt. Jordan denied Zeller medical care after the May 12 or 13, 2017 incident and will be dismissed without prejudice as to the claim that Jordan generally denied him medical care at JCI. The Court will also dismiss Claim 10 without prejudice on the grounds that it plainly relates to the claims in No. PWG-17-3136. To the extent that Zeller seeks to pursue that claim, he must seek leave to add it to that case. Finally, the Court finds that Zeller's allegations relating to sick call slips and denial of access to medical records, Claims 11 and 12, while possibly relevant to other allegations of denial of medical care, are too vague and unspecified to support freestanding claims under 42 U.S.C. § 1983 and will be dismissed without prejudice.

Thus, the remaining claims in the Amended Complaint consist of claims 1-4 only: (1) Zeller received inadequate medical care for a fall from his bunk on May 11 or 12, 2013, for his swollen ankles, herniated disc, and cervical pain; (2) Dr. Onabajo failed to change his pain medication in October or November 2016; (3) Dr. Oketunji abruptly stopped his Ultram prescription without weaning him off the medication; and (4) Zeller's Ultram prescription was too weak to be effective. Because the allegations in the Amended Complaint are insufficient to provide adequate notice to Defendants of the allegations against them, the Court will direct Zeller, if he wishes to continue to pursue these claims, to file a Second Amended Complaint within 28 days in which he states specifically what constitutional provision or federal laws he is alleging Defendants have violated in each claim and provides specific factual allegations showing how Defendants acted wrongfully. In particular, Zeller is directed to clarify the date and year that he is alleging that he fell from his bunk in May, as he seems to allege he fell out of his bunk on May 12, 2013 and May 12, 2017. He also is directed to: (1) explain how Defendants were involved in providing

12

allegedly inadequate medical care after he fell from his bunk; (2) state when and how Defendants provided improper medical care for his swollen ankles, herniated disc, and cervical pain; (3) state when Dr. Onabajo refused to change his pain medication and why Zeller requested the change; (4) state when Dr. Oketunji abruptly stopped his Ultram prescription without weaning him off and why this action was wrongful; and (6) provide details on when and why his Ultram prescription was too weak to be effective and state whether and when he alerted Defendants to his concerns. Zeller's Second Amended Complaint must contain all necessary allegations, without reliance on the prior filings, and is limited to the four identified claims only and to 20 pages written on one side of the page. The Court will not consider any new or unrelated claims. Failure to file a timely Second Amended Complaint may result in dismissal of the claims without prejudice or further notice. Zeller is directed to write "Civil Action No. TDC-17-1425" on all filings submitted in this case. If the Second Amended Complaint is deemed to state a plausible claim for relief, service will proceed on the newly named Defendants.

## CONCLUSION

For the foregoing reasons, the Motion for Appointment of Counsel will be DENIED WITHOUT PREJUDICE, and the Motion to Dismiss or, in the Alternative, Motion for Summary Judgment will be GRANTED. The Court will construe ECF Nos. 4 and 6 as an Amended Complaint but will deny leave for other previously filed documents to amend or supplement the pleadings. The Clerk shall add Warden Wolfe, JCI; Stephen T. Moyer, Secretary of the DPSCS; Bolaji Onabajo, M.D., and Ayoku Oketunji, M.D. as Defendants. A separate Order shall issue.

Date:   August 12, 2019

THEODORE D. CHUANG
United States District Judge